IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ROSE CHADWICK, on behalf of herself
and all others similarly situated                                          PLAINTIFF

v.                                   No. 4:21-cv-1161-DPM

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                                DEFENDANT

## ORDER

1.      Rose Chadwick totaled her car in an accident.  State Farm
Mutual Automobile Insurance Company was her insurer.  State Farm
had promised to pay her the actual cash value of her car, minus a
deductible.  State Farm used Audatex, an appraisal vendor, to calculate
that amount.  Audatex issued a report specifying the actual cash value
of Chadwick's car based on several factors.  The report listed the prices
of four comparable vehicles advertised for sale online.   Audatex
applied a "typical negotiation adjustment" of nine percent to the listed
price of each.  Chadwick says that this adjustment improperly assumed
that an insured like her would always be able to negotiate a reduction
in the list price of a comparable used vehicle.  This adjustment, she says,
resulted in State Farm paying her less than her car's pre-accident actual
cash value.

Chadwick has sued State Farm, bringing claims for breach of contract and declaratory judgment. State Farm moves to exclude two of Chadwick's experts. She moves to exclude one of State Farm's experts. State Farm also requests summary judgment on her claims. Chadwick says the case should go forward and seeks certification of a class of folks situated like her.

**2.    Jason Merritt.** Chadwick offers Merritt as an expert in appraising vehicles. He has appraised more than 1,000 vehicles and is a member of the Bureau of Certified Auto Appraisers. *Doc. 50-6 at 2.* He can rely on his experience in applying the comparable methodology as a vehicle appraiser. Fed. R. Evid. 702 & 2000 Addition to Advisory Committee Notes. The fact that Merritt doesn't identify any appraisal standards supporting his opinion that the negotiation adjustment is inconsistent with appraisal standards goes to the weight of his testimony, not its admissibility. *Robinson v. GEICO General Insurance Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006). His testimony will assist a jury in understanding how vehicles are typically appraised. State Farm also says that Merritt's opinions are objectively wrong because he miscalculated the actual cash value of Chadwick's totaled car. This defect, though, is rooted in a mistake in the Autosource report about Chadwick's vehicle's mileage, not in any inconsistency in Merritt's methodology. *Doc. 46-8 at 75-77.* Plus Chadwick provided the correct calculation through another expert. *Doc. 93-8.* The Court will therefore

consider Merritt's opinions in ruling on the motion for summary judgment.

3. **Kirk Felix.** Chadwick's expert, Felix, offers opinions about how the used car industry prices and sells cars. Felix has worked in that industry since 1986. *Doc. 55-1 at 2.* He has experience consulting with more than 300 used car dealerships about ensuring profitability and adapting to industry changes based on internet pricing practices. *Ibid.* State Farm argues that Felix's experience doesn't bear a close relationship to his opinions because he lacks knowledge of every individual dealer's business practices. Fed. R. Evid. 702; *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). But any gaps in Felix's knowledge go to the weight of his testimony, not its admissibility. *Robinson*, 447 F.3d at 1100. State Farm also argues that Felix's opinions aren't reliable because he didn't test them and there's no testable methodology for arriving at his opinions. The Court disagrees. Felix has explained in detail how he formed his opinions; using his experience in how dealers across the country price and advertise their inventory and how they structure used car transactions. Fed. R. Evid. 702 & 2000 Addition to Advisory Committee Notes. His opinions will help the jury understand how the used car market works.

4. **Philip Fernbach.** State Farm offers Fernbach as an expert on empirical research. He has conducted hundreds of surveys and experiments and routinely designs, executes, and interprets survey

research. *Doc. 80-1 at 1.* Chadwick argues that Fernbach's opinions are based on inadmissible hearsay. She says that the surveys aren't admissible under Federal Rule of Evidence 807 because State Farm won't disclose the survey participants' identities, depriving her of the opportunity to cross-examine them. This argument is unpersuasive. As State Farm responds, an expert may rely on otherwise inadmissible hearsay in forming his opinion. Experts in his field reasonably rely on these kinds of facts and data. Fed. R. Evid. 703; *Brennan v. Reinhart Institutional Foods*, 211 F.3d 449, 450-51 (8th Cir. 2000). Fernbach says that survey researchers like himself reasonably rely on surveys in forming opinions. *Doc. 80-1 at 1.* The Court agrees. This is another weight, not admissibility, issue. On cross, Chadwick can explore and expose any weaknesses in the underpinnings of Fernbach's opinions. *Brennan*, 211 F.3d at 450-51. Her motion to exclude Fernbach's opinions is denied.

**5. Summary Judgment.** Most of the material facts are undisputed, but where there is some disagreement, the Court views the facts in the light most favorable to Chadwick. *Anderson v. Rugged Races, LLC*, 42 F.4th 955, 958 (8th Cir. 2022).

A threshold issue is the definition of "actual cash value." State Farm's policy doesn't define this term. The Court raised this issue to the parties and asked for supplemental briefing. Neither side thinks the term is ambiguous. But the parties rely on competing definitions.

- 4 -

Citing Arkansas's model civil jury instructions, State Farm says actual cash value is the fair market value, which includes the potential price negotiations. AMI Civ. 2221 (2022). Therefore, State Farm continues, Chadwick's breach claim fails because she hasn't shown that State Farm violated the policy or that Chadwick suffered an actual injury. Chadwick, on the other hand, relies on the definition found in Black's Law Dictionary, which says actual cash value means replacement cost minus depreciation. *Value*, BLACK'S LAW DICTIONARY (11th ed. 2019). A similar definition is found in the Arkansas insurance code, which defines actual cash value as "the cost of replacing damaged or destroyed property with comparable new property, minus depreciation and obsolescence[.]" ARK. CODE ANN. § 23-101-103(1).

Each of these definitions is rooted in reason. This policy term, therefore, is ambiguous. *Pacific Life Insurance Co. v. Blevins*, 92 F.4th 734, 738 (8th Cir. 2024) (citing *Unigard Security Insurance Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 221, 962 S.W.2d 735, 740 (1998)). The parties agree that the term's meaning doesn't turn on any disputed extrinsic evidence of record. *Smith v. Prudential Property and Casualty Insurance Co.*, 340 Ark. 335, 341, 10 S.W.3d 846, 850 (2000). The Court must construe an ambiguous policy term liberally in favor of Chadwick and strictly against State Farm. *Adams v. Cameron Mutual Insurance Co.*, 2013 Ark. 475, at 4, 430 S.W.3d 675, 677-78. The Court concludes that, as she argues, the term "actual cash value" means the cost of replacing

her vehicle minus depreciation. *Adams*, 2013 Ark. at 4-5, 430 S.W.3d at 677-78. While the Court rejects State Farm's argument for summary judgment based on its preferred definition, the parties remain free to argue to the jury using Chadwick's definition whether replacement costs should or shouldn't take negotiations into account. There is, in other words, a genuinely disputed issue of material fact about calculating replacement value. The negotiation issue will continue to lurk in the case as part of the parties' damages dispute, which in turn drives whether any breach occurred.

Chadwick says that State Farm didn't keep its policy's promise when it applied the typical negotiation adjustment in fixing the actual cash value of her totaled vehicle. The parties' competing experts have different opinions about her totaled car's value. *Compare Doc. 50-6 at 7-8 & Doc. 93-8 with Doc. 46-14*. The Court has already concluded that Merritt's opinions are admissible. This creates a fact dispute on whether State Farm violated the policy. And State Farm agrees that Merritt's opinions about whether the typical negotiation adjustment is proper create a genuine dispute of material fact on damages. *Doc. 76 at 3*. Chadwick's breach of contract claim is for a jury.

Chadwick also asks the Court to declare that State Farm broke its policy by basing the valuation and payment of claims on values of comparable vehicles that have been reduced by typical negotiation adjustments. The Court agrees with State Farm that Chadwick's

-6-

declaratory judgment claim duplicates her breach of contract claim. *Reeves v. 21st Century Centennial Insurance Co.*, 2022 WL 2209412, at *3 (E.D. Mo. 21 June 2022) (collecting cases). This claim will therefore be dismissed without prejudice.

**6.    Class Certification.**    This case is appropriate for class resolution. *See* Fed. R. Civ. P. 23(a) & (b)(3). Chadwick's proposed class meets each of Rule 23(a)'s requirements — numerosity, commonality, typicality, and adequacy of representation.    This is a Rule 23(b)(3) group:  questions of law common to class members predominate over questions affecting only individuals;  and a class is superior to other methods, in terms of fairness and efficiency, for adjudicating the controversy.  The Court therefore certifies the following class under Fed. R. Civ. P. 23(b)(3):

> All persons who made a first-party claim on a policy of insurance issued by State Farm Mutual Automobile Insurance Company  to an Arkansas resident where, from 29 November 2016 through the date an Order granting class certification is entered, State Farm Mutual Automobile Insurance Company determined that the vehicle was a total loss and based its claim payment on an appraisal report from Audatex where a typical negotiation deduction was applied to at least one comparable vehicle.

It's beyond speculation that Chadwick's proposed class is too large for practical joinder. Fed. R. Civ. P. 23(a)(1). State Farm produced claims data showing that there are more than 21,000 potential class members. *Doc. 93-2 at 25-26.*  Evidence of the exact class size isn't

necessary so long as the circumstances allow for a reasonable estimate. *Riedel v. XTO Energy, Inc.*, 257 F.R.D. 494, 506-07 (E.D. Ark. 2009). The Court infers that the class is big enough to make joinder of all the affected persons impracticable. Some targeted discovery in the next few months will generate a firmer number on class size.

The proposed class is ascertainable. *McKeage v. TMBC, LLC*, 847 F.3d 992, 998-99 (8th Cir. 2017). Class members can be identified by objective criteria, including State Farm's records.

Commonality exists. The deep issue in this case is whether State Farm's application of the typical negotiation adjustment is a violation of its insurance policy. State Farm says that establishing actual cash value will be an individualized inquiry because it can present individualized valuation evidence for each class member. But this argument misses the mark. At the class certification stage, the question is not whether a jury will credit the evidence and agree with the damages model, but whether the model is common to the class. *Agmen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459-60 (2013). Merritt's damages model is common evidence that predominates over any questions affecting only specific individuals, such as the amount of damage. *See* Fed. R. Civ. P. 23(a)(2) & (b)(3).

Chadwick's claim is typical of the group. Fed. R. Civ. P. 23(a)(3); *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174-75 (8th Cir. 1995). She shares the same interest with the rest of the class members. She will

fairly and adequately protect class members' interests through her capable and experienced lawyers. The Court appoints her as the class representative. Fed. R. Civ. P. 23(a)(4). And the Court also appoints those lawyers as class counsel. Fed. R. Civ. P. 23(c)(1)(B).

A class action is the best way to fairly and efficiently manage this case to resolution. *See* Fed. R. Civ. P. 23(b)(3). Individual actions would be cost prohibitive because of the relatively small recovery and the expense of litigation; this district is a practical forum for the parties; and the limited nature of the remaining claims demonstrates manageability.

State Farm's accord and satisfaction defense doesn't preclude class treatment; to the extent it applies, this defense may actually favor it. State Farm says that a jury could find that Chadwick and other class members specifically intended to resolve any valuation dispute by accepting a settlement check or transferring title of the vehicle to State Farm, so their claims would be extinguished. ARK. CODE ANN. § 4-3-311. That issue, though, doesn't predominate over the common liability issue. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016). And if State Farm relies on common settlement documentation, if necessary the jury can make a finding that addresses this defense across many claims at once.

For all these reasons, Chadwick's motion for class certification, *Doc. 54*, is granted.

\*    \*    \*

The motions to exclude experts, *Doc. 48, 52 & 71*, are denied. State Farm's motion for summary judgment, *Doc. 44*, is partly granted and partly denied. Chadwick's motion for class certification, *Doc. 54*, is granted. The Court certifies the class as defined to pursue Chadwick's breach claim. The Court directs the parties to do some targeted discovery to provide the Court a firmer number on class size. The Court also directs the parties to confer and make a proposal about the form, substance, and method of notice. Joint report on class size and notice issues due by 30 April 2024. An Amended Final Scheduling Order will issue.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

_18 March 2024_